UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ALEX VEGA,

                              Plaintiff,

   -v.-
                                                        9:04-CV-0750
                                                        (LEK)(GJD)

D. ARTUS, Superintendent; S. BERG, Assistant
Deputy Superintendent; MR. LAREAU, Corrections
Sergeant; MR. FACTO, Corrections Sergeant;
G. LABONTE, Corrections Officer; L. WARD,
Psychologist II; MR. GARBERRA, Corrections
Counselor; and MR. SANTOR, Assistant Deputy
Supt. of Programs,

                              Defendants.

---

APPEARANCES:                          OF COUNSEL:

ALEX VEGA
Plaintiff, *Pro se*
92-B-2418
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ELIOT SPITZER              CHARLES J. QUAKENBUSH, Esq.
Office of the Attorney General       Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

LAWRENCE E. KAHN, District Judge

**ORDER**

     This action was filed by plaintiff Alex Vega ("plaintiff") on June 28, 2004. Dkt. No. 1. On February 25, 2005, plaintiff filed an amended complaint which now forms the basis of the present action. Dkt. No. 30. In the amended complaint plaintiff alleges that beginning in January 2004, while plaintiff was incarcerated at Clinton Correctional Facility ("Clinton"), plaintiff was discriminated against on the basis of defendants' perception that plaintiff is a

homosexual. Because of plaintiff's perceived sexual orientation, plaintiff alleges that the defendants denied plaintiff equal protection, removed plaintiff from his prison job, prevented plaintiff from participating in job programs at the facility, conspired to deny plaintiff his right to freedom of association, denied plaintiff's requests for an inmate legal assistant, filed false misbehavior reports against plaintiff, and harassed plaintiff. *See* Dkt. No. 30. Plaintiff claims that some or all of the alleged wrongdoing by defendants was in retaliation for plaintiff exercising his right to file grievances. *Id*.

Presently before this Court is plaintiff's motion for injunctive relief. Dkt. No. 27. Plaintiff seeks a Court Order enjoining the defendants from (1) retaliating against plaintiff by transferring plaintiff to another facility, (2) threatening to retaliate against plaintiff for plaintiff's filing of grievances, and (3) harassing plaintiff and/or filing false misbehavior reports against him. Dkt. No. 27. Plaintiff is now incarcerated at Upstate Correctional Facility ("Upstate"). See Dkt. No. 37. In support of his motion, plaintiff alleges that, when he filed this motion, he was incarcerated at the Special Housing Unit in Clinton as a protective measure because he has an extensive enemy list. Dkt. No. 27, Aff. at 1. Specifically, plaintiff states that he was housed in the Clinton Assessment and Program Participation Unit ("APPU"). Plaintiff claims that in the Clinton APPU, unlike general population protective units at other correctional facilities, he was able to participate in programming. *Id*. at 2. Plaintiff also claims that since filing the present action, he "has been subjected to 'cell searches' more often than other inmates[1] and has been 'FORCED' to submit handwriting samples or receive 'keeplock' status and denial of program to

---

[1] Plaintiff claims that his cell was searched twice since he filed this complaint. *See* Dkt. No. 27, Exhibits E, F.

Plaintiff." *Id*.

Defendants oppose plaintiff's motion stating that plaintiff's motion should be denied because plaintiff is not in danger of irreparable harm and has failed to show a likelihood of success on the merits of his claims. Dkt. No. 31 at 2. As part of their opposition, defendants submit letters or memoranda from defendants Facteau and LaBonte, from correctional officer Stevens, and from Lieutenant Lacy, in support of their position that plaintiff lost time at his prison job (at the church) because of inclement weather, not enough work to be performed at the church, and because of plaintiff's own misbehavior, and **not** because defendants were retaliating against plaintiff for sexual orientation or the filing of grievances. *See* Dkt. No. 31, Attachments at 3-6.

By affidavit, Lt. Lacy, the Lieutenant in charge of Safety and Security at Clinton, indicates that plaintiff was housed in APPU, otherwise known as Lower H Block. One cell in Lower H Block is searched everyday based upon numbers randomly drawn by the Deputy Superintendent's Office. As a result, "[i]nmates on Lower H Block should expect their cells to be searched, on average, four times per year." Dkt. No. 31, Lacy Affidavit ("Lacy Aff.") at 2. Since plaintiff alleges that his cell was searched twice in a fourteen month period, *see* Dkt. No. 27, Exhibits E and F, plaintiff was not "subjected to an inordinate number of cell searches." Lacy Aff. at 2. Lt. Lacy also indicates that it is not unusual to require a handwriting sample from an inmate for various investigative reasons. While the results of such an investigation are not reported to the inmate, it appears that no action was taken against plaintiff since he was required to give the handwriting sample in September 2004. *Id*. at 3.

3

Chris T. Liberty ("Liberty"), the Senior Correction Counselor in Clinton APPU, has also submitted an affidavit. Liberty states that inmates are evaluated annually for retention in APPU or for transfer to general population. There is a waiting list for APPU. "Since September of 2004, the Assessment Committee has evaluated 140 APPU inmates and recommended the transfer of approximately 40. Inmate Vega is among the 40 recommended for transfer to general population."[2] Dkt. No. 31, Liberty Affidavit ("Liberty Aff.") at 3. Liberty also states that when plaintiff was transferred into APPU, his list of separatees/enemies included 21 names. Twelve of those persons have been released from DOCS custody and of the 9 that remain, "[n]one are housed at the Correctional Facility to which inmate Vega will eventually be transferred, and none will be transferred to that facility while inmate Vega is there." Liberty Aff. at 3. Liberty also states:

> In evaluating Mr. Vega for retention or transfer, the committee considered Mr. Vega's crime and the time that has elapsed since it was a matter of notoriety, the time elapsed since he had a physical altercation with another inmate, his physical stature, his compliance with the programming available to him while housed in APPU, the fact that he does not need OMH [mental health] services, that there is nothing more the APPU can offer him, his readiness for return to the general population of a maximum security facility where none of his identified separatees are housed, and the fact that there is a long waiting list of inmates who are in need of the programs offered to inmates in APPU. . . . Additionally, the assessment committee considered the programs available to inmate Vega following his transfer to a specific maximum security facility. He will be able to work as a porter, a work program he has participated in

---

[2] According to Liberty, the Assessment Committee "is comprised of the Psychologist II, the Program Sergeant, all APPU Correction Counselors, and the Senior Counselors." Liberty Aff. at 2. While two members of the Assessment Committee -- Mr. Garbera and Mr. Ward -- are defendants in this action, they both abstained from the decision making process and recommendation concerning plaintiff's retention in or transfer from APPU. *Id*. at 4.

4

before, and participate in college study (correspondence).

Liberty Aff. at 5.

**A.     Legal standard**

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir. 1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id*. at 77 (affirming district court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre*, 850 F. Supp. 143, 144 (N.D.N.Y. 1994) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge that denied inmate's request for injunctive relief).

**B.     Transfer moots request for injunctive relief**

When plaintiff filed this action, he was incarcerated at Clinton and all of the allegations of wrongdoing against the defendants occurred, if at all, at Clinton. All of the defendants are employed at Clinton. Plaintiff has advised the Court that he has been moved to Upstate. Dkt. No. 37.

It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility. *Prins v. Coughlin,* 76 F.3d 504 (2d cir. 1996), *citing Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir. 1989); *Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir.1986). Accordingly, to the extent plaintiff's motion for injunctive relief is directed against the alleged wrongdoing by Clinton defendants, it must

be denied as moot. *See Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y.1992); *Malik v. Tanner*, 1988 WL 25239 (S.D.N.Y. Feb.29, 1988) (both holding that requests for injunctive relief by inmates were moot where the injunctive relief requested related to conditions or treatment at a facility out of which the inmate had been transferred).

In the present case, plaintiff has been transferred to Upstate. His request to enjoin his transfer from Clinton APPU is now clearly moot. With respect to his requests that Clinton defendants stop threatening or harassing him, filing false misbehavior reports against him, or retaliating against him, plaintiff is no longer subject to such actions by the Clinton defendants. These requests are also moot.

**C.     The merits**

Even if plaintiff's requests were not moot, they should be denied.

**1.  No right to prison of choice.**

The law is clear that an inmate does not have a right to be confined to the prison of his own choosing. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Mendez* v. *Mantello*, No. 93-CV-0908 (N.D.N.Y. Sept. 1, 1994) (DiBianco, M.J.) (citing *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989)). Thus plaintiff does not have the right to be retained in APPU at Clinton.

**2.  Retaliatory transfer.**

In light of plaintiff's allegations that his transfer from APPU was retaliatory in nature, the Court finds that, because plaintiff has no right to the prison of his choice, he has not established that he may suffer irreparable harm should injunctive relief be denied.

Moreover, a party is not entitled to injunctive relief unless there is also proof of a

6

likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief.  *See Covino*, 967 F.2d at 77.

Plaintiff failed to submit evidence which demonstrates that his transfer out of Clinton APPU **was in retaliation** for the exercise of a constitutional right.  While an inmate may not be transferred in retaliation for the exercise of a constitutional right, prison officials have broad discretion to transfer prisoners.  *Meriwether*, 870 F.2d at1046; *see Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y.1995) (McAvoy, C.J.). Plaintiff's submissions are insufficient to establish that he was transferred because he exercised a constitutional right. *See id.*  Moreover, defendants have submitted the Affidavit of Chris Liberty which sets forth multiple administrative reasons for transferring plaintiff from Clinton APPU, separate and apart from any alleged retaliatory motive.

In sum, since plaintiff has failed to establish either a likelihood of success on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward him, the Court must deny plaintiff's motion for injunctive relief.

WHEREFORE, it is hereby

ORDERED, that plaintiff's motion for injunctive relief (Dkt. No. 27) is **DENIED**, and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties.

DATED: August 03, 2005
       Albany, New York

*[signature]*

Lawrence E. Kahn
U.S. District Judge