UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALEX VEGA,

                          Plaintiff,

           v.                                              9:04-CV-0750
                                                           (GTS)(GJD)
D. ARTUS, Superintendent, *et al.*,

                          Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

ALEX VEGA, 92-B-2418
  Plaintiff, *Pro Se*
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

HON. ANDREW M. CUOMO                          CHARLES J. QUAKENBUSH, ESQ.
Attorney General for the State of New York    Assistant Attorney General
The Capitol
  Counsel for Defendants
Albany, NY 12224

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Plaintiff Alex Vega ("Plaintiff") commenced this *pro se* prisoner civil rights action pursuant

to 28 U.S.C. § 1983 ("Section 1983") alleging that ten employees of the New York State Department

of Correctional Services ("Defendants") violated his rights under the United States Constitution while

he was incarcerated at Clinton Correctional Facility.  Dkt. No. 1.  Generally, in his Amended

Complaint, Plaintiff alleges that he was harassed and discriminated against by Defendants because of

what Defendants perceived to be Plaintiff's sexual orientation.  Dkt. No. 30.  Plaintiff also alleges

that, after he filed grievances regarding the harassment and discrimination, Defendants retaliated

against him by filing false misbehavior reports, holding him back from his job on multiple occasions,

denying his request for inmate legal assistance, and threatening to transfer him out of protective custody and into general population at another correctional facility.  *Id.*  Finally, Plaintiff alleges that Defendants conspired to deny Plaintiff his constitutional rights.  *Id.*  Currently before the Court[1] is Defendants' motion for judgment on the pleadings / motion to dismiss for failure to state a claim.[2] Dkt. No. 58; *see also* Dkt. Nos. 43, 50, and 52.[3]  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.   RELEVANT LEGAL STANDARD

After the pleadings are closed, a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6) is properly brought as a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).  *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) [citations omitted]; *see also* FED. R. CIV. P. 12(b), 12(c).  However, the motion for judgment on the pleadings is then decided according to the same standard as is a motion to dismiss for failure to state a claim.  *Id.*

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

---

[1]    The parties are advised that the referral to a magistrate judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this Order, if appropriate, will be to the Court of Appeals for the Second Circuit.

[2]    All of the Defendants' names are spelled as set forth in Defendants' motion.  The Clerk has corrected the docket report to reflect the correct spellings of Defendants' names.

[3]    Because they have submitted an Answer to the Amended Complaint, Defendants Artus, Lareau, LaBonte, Ward, Garbera, Santor, Lacy, and Uhler filed their motion pursuant to FED. R. CIV. P. 12(c).  Defendants Berg and Facteau submitted their motion pursuant to FED. R. CIV. P. 12(b)(6).

With regard to the first ground, FED. R. CIV. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) [emphasis added]. By requiring this "showing," FED. R. CIV. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id*. at 212, n.18 [citations omitted].[4]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id*. at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted].

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified,

---

[4]        *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id.* at 1965-74.  The Court

explained that, while this does not mean that a pleading need "set out in detail the facts upon which

[the claim is based]," it does mean that the pleading must contain at least "some factual

allegation[s]."  *Id.* at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be

enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of

course) that all the allegations in the complaint are true.  *Id.* [citations omitted].[5]

       As have other Circuits, the Second Circuit has recognized that the clarified plausibility

standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims

brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in

light of the special solicitude normally afforded *pro se* litigants).[6]  It should be emphasized that FED.

R. CIV. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by

the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a

*pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim

under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted;

emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first

offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon

---

[5]    *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[6]    *See, e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[7]

Finally, in reviewing a complaint for dismissal under FED. R. CIV. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se*.  However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[8] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in FED. R. CIV. P. 8, 10 and 12.[9]

---

[7]        For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care.  *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

[8]        *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

[9]        *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from

Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in FED. R. CIV. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[10]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."  *Jackson*, 549 F. Supp.2d at 214, n.28 [citations omitted].

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT

Generally, Plaintiff's Complaint alleges that certain events occurred at Clinton Correctional Facility ("Clinton C.F.") in January 2004 which precipitated a pattern of retaliation against him later in 2004.

In particular, Plaintiff alleges that, on January 15, 2004, Defendant LaBonte told Inmate Peter Grieco, Plaintiff's co-worker, that (1) he (LaBonte) believed Plaintiff was a homosexual because Plaintiff associated with inmate Mark Brooks, and (2) Plaintiff and Brooks would not be allowed to work in the same program at the same time.  AC ¶ 8.  Plaintiff alleges that, after Inmate Grieco told Plaintiff about his conversation with Defendant LaBonte, Plaintiff confronted Defendant LaBonte about the conversation, whereupon LaBonte repeated the statements to Plaintiff, adding that "as long

---

dismissal for failing to comply with FED. R. CIV. P. 8); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[10]      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord*, *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

as plaintiff is assigned at the Church, inmate Brooks will 'NEVER' be assigned, for fear of 'homosexual acts' being committed between plaintiff and inmate Brooks."  AC ¶¶ 9, 11.  Plaintiff alleges that, in response, he told Defendant LaBonte that he is not homosexual and is only friends with Brooks.  AC ¶ 12.

Furthermore, Plaintiff alleges that, on January 28, 2004, he appeared before the Clinton C.F. Assessment and Program Preparation Unit ("A.P.P.U.")[11] Program Committee, which was comprised of Defendants Facteau, Garbera, and Ward, as well as "Teacher Ms. Barber" and an "unknown lady." AC ¶ 15.  Plaintiff alleges that Defendant Garbera told Plaintiff that they all knew about Plaintiff and Inmate Brooks "being an item," and that Plaintiff could not change his work program to be closer to Brooks.  AC ¶ 16.  Plaintiff alleges that, when he stated that he had never been homosexual, Defendants Facteau, Ward and Garbera stated that Plaintiff was "guilty by association" with Brooks, a known homosexual, and that, as a result, he should get used to being treated as a homosexual.  AC ¶¶ 21, 22.

Moreover, Plaintiff alleges that, on January 29, 2004, he filed a "grievance" with Defendant Artus against Defendants LaBonte, Facteau, Ward, and Garbera concerning LaBonte's statements on January 15, 2004 and the statements and actions of Facteau, Ward, and Garbera on January 28, 2004. AC ¶ 23.[12]  Plaintiff alleges that, after these incidents, he was subjected to several retaliatory acts (including the loss of his work assignment at the facility church and the receipt of four false misbehavior reports) before he was transferred to Upstate Correctional Facility ("Upstate C.F.") in March of 2005.

---

[11]     The "A.P.P.U." is "a unit for those inmates who are considered 'victim prone' for various reasons." *Lewis v. Brooks*, 9:00-CV-1433, 2005 WL 928617, at *4 (N.D.N.Y. Mar. 10, 2005) (DiBianco,  M.J.).

[12]     The Court notes that, initially, a grievance does not go to the Superintendent.

Based on these factual allegations, Plaintiff asserts **six claims** against Defendants.  First, Plaintiff alleges that **Defendant Lacy** violated his right to **due process** under the **Fourteenth Amendment**, during Plaintiff's disciplinary hearings, by (1) refusing to let Plaintiff call Inmate Brooks as a witness on one occasion, (2) beginning a hearing five hours and nineteen minutes late, and then improperly adjourning the hearing, on one occasion, and (3) laboring under a conflict of interest on another occasion (by reviewing a grievance written by Plaintiff against LaBonte while also reviewing a misbehavior report written by LaBonte against Plaintiff).

Second, Plaintiff alleges that **Defendants** violated his right to **access the courts** under the **First Amendment** by improperly denying his requests to have Inmate Brooks (as opposed to some other inmate) serve as his legal assistant.

Third, Plaintiff alleges that **Defendants** violated his right to **freedom of association** under the **First Amendment** by denying him the right to associate with Inmate Brooks.

Fourth, Plaintiff alleges that **Defendants LaBonte, Garbera, Ward, Facteau, Lareau, Uhler, and Lacy** violated **42 U.S.C. §§ 1983 and 1985** by **conspiring** to deprive him of his constitutional rights.  Specifically, Plaintiff alleges that Defendant LaBonte conspired with Correctional Officer Stevens to ensure that Plaintiff was permitted to attend his work program only at times approved by Defendant LaBonte.  Plaintiff alleges that Defendant Garbera conspired with Correctional Officers Mayo and McLain "to deprive Plaintiff of his right to legal assistance from an inmate."  Plaintiff alleges that Defendants Garbera, Ward, Facteau, Lareau, and Uhler conspired to violate Plaintiff's right of freedom of association.  Plaintiff alleges that Defendant Lacy conspired with others, including Defendant LaBonte, to deprive him of due process in the course of a disciplinary hearing, and in responding to a grievance filed by Plaintiff.

Fifth, Plaintiff alleges that **Defendants LaBonte, Berg, Santor, Lareau and Garbrera**

8

violated his right to **be free from retaliation** under the **First Amendment** by subjecting him to various forms of adverse action in response to grievances that he filed.  More specifically, Plaintiff alleges that Defendants subjected him to the following forms of adverse action: (1) Defendant LaBonte held Plaintiff back from his work program on twenty-three of thirty-six work days beginning in February 2004; (2) Defendant Garbera caused Plaintiff to be wrongfully placed in keeplock confinement in February 2004, and then to be wrongfully transferred to Upstate C.F. in March 2005; (3) Defendant Lareau issued, or caused to be issued, two false misbehavior reports against Plaintiff in April 2004; and (4) Defendants Berg and Santor denied his requests for legal assistance from Inmate Brooks in February and March 2004.

Sixth, and finally, Plaintiff alleges that **Defendants** violated his right to **equal protection** under the **Fourteenth Amendment** by treating him differently than other inmates on the basis of his perceived homosexuality.

## III.    ANALYSIS

### A.    Personal Involvement of Defendant Artus

The personal involvement of a defendant is a prerequisite for the assessment of damages in an action arising under 42 U.S.C. § 1983, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable in such an action.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a supervisory defendant can be personally involved in a constitutional deprivation.  A supervisory official is deemed to have been personally involved in four circumstances: (1) if that official directly participated in the infraction; (2) if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) if he or she created a policy or custom under which unconstitutional

practices occurred or allowed such a policy or custom to continue; or (4) if he or she was grossly

negligent in managing subordinates who caused the unlawful condition or event. *Id*. Prison

supervisors cannot be deemed personally involved based simply on a response to a complaint. *See*

*Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Moreover,

> [i]t is now well-settled that the failure of a supervisory official to
> investigate a letter of protest written by an inmate is not sufficient
> to show personal involvement. *Smart v. Goord*, 441 F. Supp. 2d
> 631, 642-643 (S.D.N.Y. 2006). The same is true if the only
> involvement of the supervisory official is to refer the inmate's
> complaint to the appropriate staff for investigation. *Ortiz-
> Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342,
> 347 (W.D.N.Y. 2007).

*Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008) (Hurd, J.).

"Some courts have held that if the supervisory official acts personally in denying a grievance

at various stages of the grievance process, he may be sufficiently involved in failing to remedy the

situation." *Harnett*, 538 F. Supp. 2d at 524-25 (citing *Atkinson v. Selsky*, 03 Civ. 7759, 2004 WL

2319186, *1, 2004 U.S. Dist. LEXIS 20560, *2-4 [S.D.N.Y. Oct. 15, 2004] [denial of grievance

sufficient for personal involvement]). To determine personal responsibility in such a case, the

grievance must allege an "ongoing" constitutional violation that the supervisory official who reviews

the grievance can remedy directly. *Hall v. Leclaire*, 06 Civ. 946, 2007 WL 1470532, 2007 U.S. Dist.

LEXIS 36951 (S.D.N.Y. May 22, 2007), *accepted in part and rejected in part on other grounds,*

2007 WL 2815624, 2007 U.S. Dist. LEXIS 72715 (S.D.N.Y. Sept. 24, 2007); *see also Young v. Kihl*,

720 F. Supp. 22, 23 (W.D.N.Y. 1989) (the wrong must have been capable of mitigation at the time

the supervisory official was apprised thereof). "If the official is confronted with a violation that has

already occurred and is not ongoing, then the official will not be found personally responsible for

failing to 'remedy' a violation." *Harnett*, 538 F. Supp. 2d at 524-25.

"Further, a Section 1983 plaintiff must 'allege a tangible connection between the acts of the

defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2

(S.D.N.Y. Mar. 31, 2008) (citing *Bass v. Jackson*, 790 F.2d 260, 263 [2d Cir. 1986] [other citation

omitted]).  Moreover, where the personal involvement of a defendant in a Section 1983 violation is

premised upon a claim of conspiracy, "[i]t is incumbent on a plaintiff to state more than conclusory

allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his

constitutional rights."  *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

       In his Amended Complaint, Plaintiff alleges that he sent several letters and grievances to

Defendant Artus, who then referred *all but one of them* to appropriate correctional staff for

investigation.  Defendant Artus's actions in referring the letters to staff for investigation is not

sufficient to establish personal involvement.[13]  The only grievance that Defendant Artus allegedly

reviewed directly was the appeal of Plaintiff's January 29, 2004, grievance complaining of (1)

Defendant LaBonte's "actions and statements on Jan. 15, 2004," and (2) the statements of Defendants

Facteau, Ward, and Garbera on January 28, 2004.  AC ¶ 23.  However, the misconduct alleged in that

grievance had occurred before January 29, 2004, and was not ongoing when the grievance was later

reviewed on appeal by Defendant Artus.  Since Defendant Artus was presented with a grievance in

---

[13]      Prison supervisors are entitled to refer letters of complaint to subordinates, and
rely on those subordinates to conduct an appropriate investigation and response, without
rendering the supervisors personally involved in the constitutional violations alleged in the
letters of complaint.  *See Brown v. Goord,* 04-CV-0785, 2007 WL 607396, at *6 (N.D.N.Y. Feb.
20, 2007) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J., on *de novo* review)
[citations omitted]; *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS
Commissioner was not personally involved in alleged constitutional violation where he
forwarded plaintiff's letter of complaint to a staff member for decision, and he responded to
plaintiff's letter inquiring as to status of matter); *Swindell v. Supple*, 02-CV-3182, 2005 WL
267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[A]ny referral by Goord of letters received from
[plaintiff] to a representative who, in turn, responded, without more, does not establish personal
involvement."); *Garvin v. Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. (2002) ("[W]here a
commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner
correspondence to appropriate staff, the commissioner has insufficient personal involvement to
sustain a § 1983 cause of action.").

which the alleged misconduct had ceased, Defendant Artus cannot be found to be personally involved for failing to remedy that misconduct.

Accordingly, Plaintiff's claims against Defendant Artus are dismissed due to Plaintiff's failure to allege facts plausibly suggesting that Artus was personally involved in the alleged constitutional violations.

### B.    Plaintiff's Due Process Claims

An inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. *See Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

Plaintiff alleges that Defendant Lacy denied Plaintiff due process when Lacy presided over Plaintiff's February 26, 2004 disciplinary hearing because Lacy refused to let Plaintiff call Inmate Brooks as a witness. AC ¶ 51. At the conclusion of the February 26, 2004 hearing, Defendant Lacy found Plaintiff to be not guilty.[14] AC ¶ 51. Plaintiff alleges that Defendant Lacy presided over Plaintiff's April 22, 2004 disciplinary hearing relating to two misbehavior reports written against Plaintiff. AC ¶ 79. Plaintiff was found not guilty of the charges in the first misbehavior report. Plaintiff entered a plea of guilty to the second report, and Defendant Lacy sentenced Plaintiff to fifteen (15) days keeplock and loss of privileges. *Id*. On May 7, 2004, Defendant Lacy conducted Plaintiff's disciplinary hearing wherein Plaintiff was charged with losing state issued gloves. AC ¶ 95. Plaintiff entered a plea of guilty and was sentenced to pay restitution and a surcharge. *Id*.

---

[14]      After the first disciplinary hearing, Plaintiff was released from keeplock after serving nine (9) days.

Plaintiff claims that he was denied due process with respect to this hearing because the hearing commenced five (5) hours, nineteen (19) minutes late, and was thereafter improperly adjourned. *Id*. Finally, Plaintiff claims that, because Defendant Lacy reviewed both a misbehavior report issued by Defendant LaBonte against Plaintiff and a grievance written by Plaintiff against LaBonte, a conflict of interest was created. *Id*.

While Plaintiff contends that his due process rights were violated during various disciplinary hearings, Plaintiff never received more than fifteen (15) days of keeplock as a result of each of these hearings. As a number of district courts have noted, "the decisions in the Second Circuit are unanimous that keeplock ... of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*." *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) (quoting *Williams v. Keane*, No. Civ. 95-0379, 1997 WL 527677, at *6 [S.D.N.Y. Aug. 25, 1997] [citing cases]). To the extent that Plaintiff also alleges that he lost certain privileges, "the loss of phone, package, and commissary privileges does not give rise to a protected liberty interest under New York law." *Smart*, 441 F. Supp. 2d at 640 (citing *Husbands v. McClellan*, 990 F. Supp. 214, 217 [W.D.N.Y. 1998]).

Plaintiff's allegations of bias or conflict of interest stemming from Defendant Lacy's review of both Defendant LaBonte's misbehavior report against Plaintiff and Plaintiff's grievance against LaBonte fails to state a claim of constitutional dimension. As the Second Circuit has explained,

> [T]he degree of impartiality required of prison hearing officials does not
> rise to the level of that required of judges generally.  Because of the
> special characteristics of the prison environment, it is permissible for the
> impartiality of such officials to be encumbered by various conflicts of
> interest that, in other contexts, would be adjudged of sufficient magnitude
> to violate due process.

*Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) (citing *Cleavinger v. Saxner,* 474 U.S. 193, 203-04 [1985]).

Because the Amended Complaint fails to state a claim against Defendant Lacy for violation of Plaintiff's right to due process, Defendant Lacy's motion for judgment on the pleadings is **granted** and Plaintiff's due process claims are **dismissed**.

### C.      Plaintiff's Claim of Denial of Access to the Courts

Inmates have a First Amendment right to "petition the Government for a redress of grievances."[15]  This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) [citations omitted].  "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord,* 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).  As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.  *Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-

---

[15]      *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.) (same); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

In this case, the gravamen of Plaintiff's access to the courts claim is that he was denied the right to have Inmate Brooks serve as his legal assistant. Plaintiff was advised that "all legal assistance will be done by A.P.P.U. Law Library Clerks." AC ¶ 65. Plaintiff's allegation that he was denied legal assistance from a *specific inmate* does not allege a constitutional violation, as long as some form of legal assistance was available. *Chaney v. Koupash*, No. 9:04-CV-136, 2008 WL 5423419, at *18 (N.D.N.Y. Sept. 26, 2008) (Homer, M.J.) (citing *Smith v. Maschner*, 899 F.2d 940, 950 [10th Cir. 1990] ["Prison inmates do not possess the right to a particular prisoner's help in preparing their legal materials, so long as prison officials make other assistance available."] [citations omitted]). Moreover, even if Plaintiff's allegations were found to state a claim, Plaintiff does not allege any actual injury as a result of Defendants' alleged conduct.

Accordingly, Plaintiff's claims that he was denied the right to access the courts are **dismissed**.

### D. Plaintiff's Claims of Denial of Right of Association

The Supreme Court has observed that a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974). But the Court has also said:

> Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's status as a prisoner and the operational realities of a prison dictate restrictions on the associational rights among inmates.

*Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125-26 (1977).

Plaintiff appears to claim that Defendants have denied him the right to associate with Inmate

Brooks because Defendants perceived Plaintiff to be homosexual and wished to deter a possible sexual relationship between Plaintiff and Brooks, a known homosexual.  Plaintiff alleges that he was repeatedly told that he would never be allowed to participate in the same work program as Brooks. AC ¶¶ 11, 19, 20.  Plaintiff also claims that he was not allowed to receive legal assistance from Brooks.  AC ¶¶ 65.  Plaintiff's allegations fail to allege the denial of an associational right under the First Amendment.  *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (prisoner has no right to a particular work assignment); *Chaney*, 2008 WL 5423419, at * 18 [citations omitted] (inmates have no constitutional right to a particular position of employment); *Lewis,* 518 U.S. at 343  ("*Bounds* did not create an abstract, free standing right to a law library or legal assistance; rather, the right that *Bounds* acknowledged was the right of *access to the courts."*); *Johnson v. Avery*, 393 U.S. 483 (1969) (where prison officials provide inmates reasonable legal assistance, prison officials may prohibit inmates from giving other inmates legal assistance).

Construed with special leniency, Plaintiff's remaining allegations regarding his right of association relate to threats to curtail his contact with Inmate Brooks.  As an initial matter, Plaintiff does not allege facts plausibly suggesting any concrete interference in his ability to associate with Brooks.  In fact, Plaintiff cites several occasions where he had contact with Inmate Brooks: (1) on February 18, 2004, Plaintiff met with Inmate Brooks at the library on February 18, 2004 (AC ¶ 39); (2) on March 22, 2004, Plaintiff and Brooks "submitted a SECOND REQUEST for Legal Assistance from an Inmate Other Than A Law Library Clerk" (AC ¶ 62); (3) on or before April 16, 2004, Plaintiff purchased items for Brooks (AC ¶¶ 72-74); and (4) on July 2, 2004, Plaintiff and Brooks spoke to each other in the prison yard (AC ¶ 110).  It bears repeating that an inmate does not have a "constitutional or statutory right to . . . associate with other inmates."  *Fisher v. Goord*, 981 F.Supp. 140, 169 (W.D.N.Y. 1997).

Accordingly, Plaintiff's claims that he was denied his right of association are **dismissed**.

### E.      Plaintiff's Conspiracy Claims

To survive a motion to dismiss, a conspiracy claim under 42 U.S.C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Concepcion v. City of New York*, No. 05 Civ. 8501, 2008 WL 2020363, at *5 (affirming the continued viability of the *Ciambriello* standards when analyzing a conspiracy claim *vis a vis* a motion to dismiss).[16]  Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").  Moreover, a Section 1983 conspiracy claim must not only allege a conspiracy, but the "actual deprivation of constitutional rights."  *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin,* 901 F. Supp. 757, 765 [S.D.N.Y. 1995]).  "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."  *See id.*

Here, Plaintiff alleges as follows: (1) Defendant LaBonte conspired with Correctional Officer

---

[16]      The *Concepcion* Court stated that "in accord with Supreme Court precedent as well as the overwhelming weight of authority in this Circuit, this Court applies the *Ciambrello* standard in evaluating the sufficiency of the conspiracy claim ... under the Rule 12(b)(6) standard. In this regard ... the Court notes that it does not construe the decision in *Ciambrello* as imposing a 'heightened pleading requirement[ ]' for civil rights conspiracy claims ... nor a requirement that plaintiff must plead 'specific facts' to support his claim....  Rather, it reads *Ciambrello* as informing this Court's understanding of the type of factual allegations that are minimally sufficient to state a 'plausible' conspiracy claim under § 1983." *Concepcion*, 2008 WL 2020363, at *5.

Stevens[17] "to NOT permit Plaintiff to attend his work program until such time as Defendant LaBonte directs" (Count 3); (2) Defendant Garbera conspired with Correction Officers Mayo and McLain "to deprive Plaintiff of his right of Legal Assistance from an Inmate" (Count 4); (3) Defendants Garbera, Ward, Facteau, Lareau, and Uhler conspired "to violate Plaintiff's 1st Amendment Freedom of Association Rights" (Count 5); and (4) Defendant Lacy conspired with others, including Defendant LaBonte, to deprive Plaintiff of due process in the course of a disciplinary hearing and in responding to a grievance filed by Plaintiff (Count 8).  AC ¶¶ 141, 142, 143, 146.

Plaintiff does not assert any facts giving rise to a conspiracy, but instead vaguely asserts conclusory statements relating to an alleged conspiracy among Defendants.  For example, in support of the alleged conspiracy between Defendant LaBonte and Correctional Officer Stevens, Plaintiff alleges that on March 31, 2004, while Stevens was substituting for Defendant LaBonte, Plaintiff asked Stevens why Plaintiff was not being taken to his assigned program.  AC ¶ 66.  "Stevens stated that Defendant LaBonte did not tell me when to start bringing you back to work."  *Id*.  These allegations at best demonstrate only that Correctional Officer Stevens was following the direction of the staff person he was substituting for on a particular day.  Plaintiff has not alleged, except in speculative and/or conclusory fashion, that any meeting of the minds occurred between Defendant LaBonte and Correctional Officer Stevens to violate Plaintiff's rights.

Simply stated, the Court has reviewed the Amended Complaint and finds that it does not contain any factual allegations to support a "plausible" conspiracy claim involving any of the Defendants.  "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (citing *Bell*

---

[17]        Stevens is not a Defendant in this action.

*Atlantic Corp.*, 127 S.Ct. at 1965).

Additionally, the Court has determined that Plaintiff (1) had no constitutional right to receive legal assistance from a specific inmate (*see*, *supra*, Section II.E. of this Decision and Order), (2) alleges no viable claim for denial of his right of association (*see*, *supra*, Section II.F. of this Decision and Order), and (3) fails to allege a due process claim (*see*, *supra*, Section II.D. of this Decision and Order).  As a result, the conspiracy claims set forth in Counts 4, 5, and 8 fail, because Plaintiff has not alleged "an actual deprivation of constitutional rights."  *See Romer*, 119 F. Supp. 2d at 363-64 ("if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights").

Plaintiff's claims can also be read to assert conspiracy claims under 42 U.S.C. § 1985.  *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (construing a Section 1983 claim styled as a "Conspiracy to Violate Civil Rights" as a Section 1985 claim), *cert. denied*, 540 U.S. 1110 (2004).  To state a claim under 42 U.S.C. § 1985(3),[18] a plaintiff must allege:

> '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States.' *Fox v. City of New York,* No. 03 Civ. 2268, 2004 WL 856299, at *9 (S.D.N.Y. Apr. 20, 2004) (quoting *Mian* [*v. Donaldson, Lufkin & Jenrette Sec. Corp.*]*,* 7 F.3d [1085,] 1087-88 [(2d Cir.1993)]).

*Mione v. McGrath*, 435 F. Supp. 2d 266, 271-72 (S.D.N.Y. 2006).

However, the language of 42 U.S.C. § 1985(3), requiring intent to deprive of equal protection

---

[18]     Plaintiff's Section 1985 claims appear to fall under subparagraph 3, which prohibits acts which deprive a person of his federal rights or privileges.  Neither subparagraph 1 (preventing an officer from performing his duty) nor subparagraph 2 (obstructing justice or intimidating a party or witness in any United States Court) have any relevance to Plaintiff's claims.

of the laws, "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Segreto v. Kirschner*, 977 F. Supp. 553, 565 (D. Conn. 1997) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 [1971]).  "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex."  *Martin v. New York State Dep't of Corr. Servs*., 115 F. Supp.2d 307, 316 (N.D.N.Y. 2000) (Smith, M.J.) [citations omitted], *accord*, *Williams v. Calidonna*, 06-CV-0178, 2008 WL 4693160, at *9 (N.D.N.Y. Oct. 21, 2008) (Hurd, J., adopting Report-Recommendation by Treece, M.J.).  "Indeed, [the Northern District of New York] has suggested that, because § 1985(3) was not intended to create general federal tort law, the statute should extend beyond its racial boundaries only when a class has been afforded suspect or quasi-suspect classification or when Congress has provided the class special protection."  *Martin*, 115 F. Supp.2d at 316 (citing *Ryan v. City of Watertown*, 98-CV-0616, 1998 WL 709798, at *8 [N.D.N.Y. Oct. 7, 1998] [McAvoy, J.].).[19]  "Under current law, however, homosexuality has only been afforded rational basis review, and it has not been given special protection by Congress."  *Martin*, 115 F. Supp.2d at 316 [citations omitted], *accord*, *Dix v. City of New York*, 01-CIV-6186, 2002 WL 31175251, at *10 (S.D.N.Y. Sep. 30, 2002).

Moreover, "[a]s the Second Circuit has noted repeatedly, conspiracy claims are to be viewed with skepticism and must be supported by more than mere conclusory allegations." *Webb*, 340 F.3d at 110 ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") [internal quotation marks omitted].  Plaintiff's conclusory allegations of a conspiracy against him fail to allege facts plausibly suggesting a meeting of the

---

[19]        *See also Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1993).

minds between the Defendants or that Defendants entered into an agreement to violate Plaintiff's rights.

Finally, and perhaps most importantly, even if Plaintiff's allegations were found to be more than merely conclusory, Plaintiff's conspiracy claims are barred by the "intra-corporate conspiracy" doctrine, also sometimes referred to as the "intraenterprise conspiracy" doctrine or the "intra-agency conspiracy" doctrine. Generally, that doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) [citation omitted]. Because the Court has found seven district court cases from within this Circuit in which the intracorporate conspiracy doctrine has been applied with regard to conspiracy claims against the State, and only one district court case in which it has not been so applied, the Court finds that the intracorporate conspiracy doctrine does apply to cases in which the entity is the State.[20] Even where the doctrine applies to a plaintiff's conspiracy claims, those claims *may* fall within the doctrine's "scope of employment" exception, which exists "when individuals pursue personal interests wholly separate and apart from the entity."[21] However,

---

[20]    *See Farid v. Bouey*, 554 F. Supp.2d 301, 324 (N.D.N.Y. 2008) (Sharpe, J.); *Lewis v. Goord*, 06-CV-0504, 2008 WL 902179, at *4 (N.D.N.Y. March 31, 2008) (Scullin, J., adopting, on *de novo* review, report-recommendation by Treece, M.J.); *Ozuno v. Vadlamudi*, 03-CV-0475, 2006 WL 1977618, at *10, n.7 (N.D.N.Y. July 11, 2006) (Sharpe, J., adopting, on *de novo* review, report-recommendation by Peebles, M.J.); *Colon v. Sawyer*, 03-CV-1018, 2006 WL 721763, at *6, n.8 (N.D.N.Y. March 20, 2006) (Kahn, J.); *Orafan v. Goord*, 411 F. Supp.2d 162, 164-65 (N.D.N.Y. 2006) (Magnuson, V.J.); *Scott v. Goord*, 01-CV-0847, 2004 WL 2403853, at *13 (S.D.N.Y. Oct. 27, 2004); *Cates v. State of Conn. DOCS*, 98-CV-2232, 2000 WL 502622, at *8 (D. Conn. Apr. 13, 2000); *but see Fox v. Brown*, 05-CV-1292, 2007 WL 586724, at *12 (N.D.N.Y. Feb. 21, 2007) (Kahn, J., adopting, on *de novo* review, report-recommendation of Di Bianco, M.J.); *see also Cusamano v. Sobek*, 06-CV-0623, 2009 WL 211155, at *29 (N.D.N.Y. Jan. 29, 2009) (Suddaby, J., adopting on *de novo* review report-recommendation of Lowe, M.J.).

[21]    *Orafan v. Goord*, 411 F. Supp.2d 153, 165 (N.D.N.Y. 2006) (Magnuson, J.) [internal quotation marks and citations omitted], *vacated and remanded on other grounds sub nom.*, *Orafan v. Rashid*, No. 06-2951, 249 F. App'x 217 (2d Cir. Sept. 28, 2007).

"in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity, more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff."[22]

Here, all of the Defendants were DOCS employees during the period set forth in the Amended Complaint and all were acting within the scope of their employment.  (In fact, Plaintiff himself alleges that all of the Defendants were acting under color of state law.  AC ¶ 3.)  Therefore, the Court finds that the intra-corporate conspiracy doctrine applies to the facts alleged in this action.  Additionally, the exception to the intra-corporate conspiracy doctrine does not apply here.  Plaintiff does not allege facts plausibly suggesting that each Defendant possessed an independent personal purpose, but merely alleges that their actions were motivated by their personal bias against homosexuality.

For all of these reasons, Plaintiff's conspiracy claims are **dismissed**.

## F.     Plaintiff's Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 [2d Cir. 2001]), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002.  In order to survive a motion to dismiss a complaint, a plaintiff asserting a First

---

[22]     *Cusamano*, 2009 WL 211155, at *29; *see also Peters v. City of New York*, 04-CV-9333, 2005 WL 387141, at *3 (S.D.N.Y. Feb. 16, 2005) ("[P]ersonal bias is not the sort of individual interest that takes a defendant out of the intraenterprise conspiracy doctrine where, as here, the action complained of arguably served a legitimate interest of [the employer].") [internal quotation marks and citation omitted]; *accord*, *Johnson v. City of New York*, 01-CV-1860, 2004 WL 502929, at *5 (E.D.N.Y. Jan. 12, 2004).

Amendment retaliation claim must advance "non-conclusory" allegations establishing the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983). Finally, even if Plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

Plaintiff alleges that he filed grievances and complaints on January 29, 2004, February 4, 2004, February 9, 2004, February 18, 2004, and September 8, 2004. Since the filing of prison grievances is a constitutionally protected activity, Plaintiff meets the first prong of the retaliation test. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988) (filing a prison grievance is a constitutionally protected activity).

To meet the second prong of the retaliation test, Plaintiff must allege that Defendants took adverse action against him because he filed grievances. The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) [citation omitted; omission in original]. This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* However, as the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes,* 239 F.3d at 491 [citation omitted]. If a retaliatory act against an inmate

23

would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes,* 239 F.3d at 493.

Finally, Plaintiff must establish a causal connection between the protected conduct and the adverse action.

> To satisfy the causal-connection prong of a retaliation claim, an inmate must show "that the protected conduct was a 'substantial or motivating factor' in the prison officials' decision to take action against the plaintiff." *Ciaprazi v. Goord,* No. 9:02 CV 00915, 2005 WL 3531464, *6 (N.D.N.Y. Dec. 22, 2005) [citations omitted]. The court may consider a number of factors when determining whether a causal connection exists, including "(1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." *Holmes,* 2006 WL 851753, at *15 [citation omitted].

*Zaire v. Doe,* 9:03-CV-629, 2006 WL 1994848, at *5 (N.D.N.Y. Jul. 13, 2006) (Scullin, J.).

### 1.    Defendant LaBonte

Plaintiff claims that, in retaliation for Plaintiff filing his January 29, 2004 grievance against LaBonte, beginning on February 9, 2004, LaBonte held Plaintiff back from his work program on 23 of 36 work days.  AC ¶¶ 36-85.  Even examining these allegations with "skepticism and particular care," they are sufficient, taken in the light most favorable to Plaintiff, to withstand a motion to dismiss pursuant to Federal Rule 12(b)(6) or for judgment on the pleadings pursuant to Federal Rule 12(c). Based on Plaintiff's allegations, it is at least "plausible" that he was held back from his prison job in retaliation for his protected conduct.  As noted, the question presented by Defendants' motion is not whether Plaintiff is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims."  *Gant*, 69 F.3d at 673.  Discovery may reveal that Defendant LaBonte's actions were not retaliatory.  However, at this stage of the litigation, and without a more

complete record, it is incumbent upon the Court to construe this *pro se* pleading liberally in the Plaintiff's favor.  Since these allegations are not wholly conclusory, Defendants' motion for judgment on the pleadings is **denied** to the extent that it requests the dismissal of portion of Plaintiff's retaliation claim against Defendant LaBonte.

Plaintiff further claims that Defendant LaBonte retaliated against Plaintiff by issuing him a false misbehavior report on April 24, 2004.  AC ¶ 86.  Defendant LaBonte's misbehavior report claimed that Plaintiff lost state issued gloves.  Plaintiff admitted that he lost the gloves.  "When it is undisputed that an inmate has in fact committed prohibited conduct, no retaliatory discipline claim can be sustained."  *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).  Since Plaintiff admitted that he lost the state issued gloves, Defendant LaBonte would have taken the adverse action even in the absence of the protected conduct.  Accordingly, this portion of Plaintiff's retaliation claim against Defendant LaBonte is **dismissed**.

### 2.      Defendant Garbera

Plaintiff alleged that, on February 18, 2004, as he walked past Defendant Garbera and Correctional Officer Mayo, Garbera said "GOT YA" to Plaintiff.  AC ¶ 42.  Later in the day, Plaintiff was placed in keeplock as a result of a misbehavior report issued by Correctional Officer Mayo.  AC ¶ 45.  Plaintiff claims that the incidents of February 18, 2004 were "a form of harassment and retaliation for the Jan. 29, 2004 grievance written and that [Correctional Officer Mayo's] Misbehavior Report [was] Frivolous."  AC ¶ 46.  The January 29, 2004 grievance was in part against Garbera.  Plaintiff also alleges that on January 5, 2005, Defendant Garbera stated "You don't file law suits in my jail and expect not to have your ass thrown out of here by us Counselors."  AC ¶ 133.

25

Plaintiff also alleges that on January 12, 2005,[23] Garbera told Plaintiff, "You can't stop my method of getting you out of here, I [w]in." AC ¶ 135. Plaintiff claims that action was taken "to have Plaintiff transferred as a means of Retaliation." AC ¶ 138. Plaintiff was transferred to Upstate C.F. on March 16, 2005, after he filed this action. *See* Dkt. No. 37. Plaintiff's allegations are sufficient to survive a motion for judgment on the pleadings.

### 3. Defendant Lareau

While not entirely clear, Plaintiff seems to allege that Defendant Lareau issued, or caused to be issued, two misbehavior reports against Plaintiff on April 17, 2004. AC ¶¶ 73-78. Plaintiff further alleges that these misbehavior reports, as well as others, were issued "because of Threats and Intimidation Tactics used against plaintiff, by Defendant Lareau." AC ¶ 87. Construing Plaintiff's allegations with special leniency, as the Court must, Plaintiff's allegations of retaliation by Defendant Lareau are sufficient to survive dismissal at this stage of the action.

### 4. Defendants Berg and Santor

Plaintiff claims that Berg and Santor retaliated against Plaintiff by denying Plaintiff's request for Legal Assistance from Inmate Brooks because Plaintiff filed grievances. AC ¶ 145. However, Plaintiff also states that his request was denied because of a correctional facility policy that "all legal assistance will be done by A.P.P.U. Law Library Clerks." AC ¶ 65. Since Plaintiff's allegations demonstrate that Defendants would have denied Plaintiff's request even in the absence of Plaintiff's grievances, Plaintiff's retaliation claim against Defendants Berg and Santor must be **dismissed**. *See Bennett*, 343 F.3d at 137 (defendants may avoid liability for retaliatory conduct if they demonstrate that they would have taken the adverse action for a legitimate reason).

---

[23]     As earlier stated, while Plaintiff's Amended Complaint states that Garbera's statement was made on January 12, *2004*, given the sequence of events set forth in Plaintiff's Amended Complaint, it appears that this statement was made on January 12, *2005*.

### 5.      Conclusion Regarding Plaintiff's Retaliation Claims

Defendants' motions for judgment on the pleadings are **granted** with respect to Plaintiff's retaliation claims against Defendants Berg and Santor, **but denied** as with respect to Plaintiff's retaliation claims against Defendants LaBonte, Lareau, and Garbera.  The Court expresses no opinion, however, as to whether or not Plaintiff's retaliation claims against Defendants LaBonte, Garbera, or Lareau would survive a motion for summary judgment.

### G.      Plaintiff's Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr.* 473 U.S. 432, 439 (1985).  Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person*.'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis in original) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 [2d Cir. 1980]).  "Sexual orientation has been held to be a basis for an equal protection claim under Section 1983."  *Emblen v. Port Authority of New York/New Jersey*, No. 00 Civ. 8877, 2002 WL 498634, at *7 (S.D.N.Y. Mar. 29, 2002); *Quinn v. Nassau County Police Dep't,* 53 F. Supp. 2d 347, 356-57 (E.D.N.Y. 1999) (holding that the Supreme Court in *Romer v. Evans,* 517 U.S. 620 (1996) "established that government discrimination against homosexuals, in and of itself, violates the Equal Protection Clause") [citation omitted]); *Tester v. City of New York,* No. 95 Civ. 7972(LMM), 1997 WL 81662 (S.D.N.Y. Feb. 25, 1997).[24]

---

[24]      *See also Holmes v. Artuz*, 95 CIV. 2309, 1995 U.S. Dist. LEXIS 15926, at *3 (S.D.N.Y. Oct. 27, 1995) [citation omitted]); *Howard v. Cherish*, 575 F. Supp. 34, 36 (S.D.N.Y. 1983) (recognizing in dicta that complaint might state claim under § 1983 if it alleged that

The only plausible allegations that he was denied equal protection on the basis of his perceived homosexuality are against Defendant LaBonte.  Plaintiff alleges that Defendant LaBonte did not allow Plaintiff to attend his job at the prison Church on multiple occasions because LaBonte perceived Plaintiff to be homosexual, even though other inmates were taken to their Church job on those days.  *See, e.g.*, AC ¶¶ 36, 52, 53, 63, 64, 83, and 85.  The fact that Plaintiff asserts that he is not homosexual is irrelevant to his equal protection claims.  *See Emblem*, 2002 WL 498634, at *7 (when plaintiff alleges denial of equal protection on the basis of homosexuality, the fact that plaintiff is not a homosexual is "irrelevant").

While Plaintiff alleges in very general terms that all of the Defendants discriminated against him on the basis of his perceived homosexuality, Plaintiff merely alleges that the remaining Defendants made harassing comments against him because they believed that he was homosexual. Plaintiff does not allege that any of the Defendants, except for Defendant LaBonte, subjected him to disparate treatment on the basis of his perceived homosexuality.  Plaintiff's allegations against the remaining Defendants do not plausibly suggest a violation of equal protection.  At best, Plaintiff alleges that he was verbally harassed.  However, allegations of verbal harassment are insufficient to support a § 1983 claim.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("Purcell's claims that prison guards called him names ... did not allege a constitutional violation ...."); *Liggins v. Parker*, 04-CV-0966, 2007 WL 2815630, at *17 (N.D.N.Y. Sept. 25, 2007) (Mordue, C.J., adopting Report-Recommendation by Peebles, M.J.) ("[R]egardless of how boorish and reprehensible such conduct may appear, verbal harassment of inmates by prison officials generally does not arise to the level of constitutional significance.") [citations omitted]).

Defendants' motion for judgment on the pleadings are **denied** with respect to Plaintiff's equal

---

individual was discriminated against solely because of sexual orientation).

protection claims against Defendant LaBonte, **but granted** as to Plaintiff's other equal protection claims.  The Court expresses no opinion, however, as to whether or not Plaintiff's equal protection claims against Defendant LaBonte would survive a motion for summary judgment.

### H.    Plaintiff's Remaining Claim Against Defendant Uhler

Apart from a conspiracy claim that has been dismissed, the only other allegation against Defendant Uhler is that Plaintiff's cell was searched on August 3, 2004, at Uhler's direction.  Since cell searches are an incident of prison life, Plaintiff fails to allege that Defendant Uhler violated Plaintiff's constitutional rights.  *See Willis v. Artuz*, 301 F.3d 65, 67-69 (2d Cir. 2002) (prisoners have no legitimate expectation of privacy in their prison cell; the loss of privacy is an incident of prison life).  Because the Amended Complaint fails to state a claim against Defendant Uhler upon which relief can be granted pursuant to 42 U.S.C. § 1983, Defendant Uhler's motion for judgment on the pleadings is **granted**, and Defendant Uhler is **dismissed** from this action.

### I.    Plaintiff's Claims Against Defendant Ward

Plaintiff also fails to allege viable claims against Defendant Ward.  Apart from a conspiracy claim that has been dismissed, Plaintiff alleges that Defendant Ward (1) took part in a program committee meeting that Plaintiff attended on January 26, 2004 (AC ¶¶ 14-20); (2) stated that Plaintiff should get used to being treated as a homosexual because he associated with a known homosexual (AC ¶ 22); (3) demanded an apology from Plaintiff because Plaintiff falsely accused him of misconduct (AC ¶ 25-30); and (4) told inmate Martin that Plaintiff "dropped a 'RAT SLIP' on inmates Waldren and Martin" (AC ¶ 110).  These allegations do not support a constitutional claim of any sort.  Plaintiff also alleges that Ward failed to respond to Plaintiff's letter of complaint.  AC ¶ 11. This also does not present a claim for relief.  *See Harnett*, 538 F. Supp. 2d at 524-25 (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show

personal involvement).  Because the Amended Complaint fails to state a claim against Ward upon

which relief can be granted pursuant to 42 U.S.C. § 1983, Defendant Ward's motion for judgment on

the pleadings is **granted** and Defendant Ward is **dismissed** from this action.

### J.    Defendant's Qualified Immunity Defense

Defendants raise the affirmative defense of qualified immunity.  Dkt. No. 43-2 at 17-19.

"Qualified immunity is an affirmative defense that shields government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Stephenson v. Doe*, 332 F.3d 68, 76 (2d

Cir. 2003) [citations omitted].

In determining whether qualified immunity applies, the court may first consider whether "the

facts alleged show the [defendant's] conduct violated a constitutional right."  *Saucier v. Katz*, 533

U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 129 S.Ct. 808 (2009) (holding that although

"the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as

mandatory").  If the plaintiff establishes that the violation of a constitutional right occurred, the court

can examine "whether the right was clearly established ... in light of the specific context of the case,

not as a broad general proposition."  *Saucier*, 533 U.S. 194 at 201.  "If no constitutional right would

have been violated were the allegations established, there is no necessity for further inquiries

concerning qualified immunity."  *Id*.  Because Plaintiff has not sufficiently alleged that Defendants

Artus, Berg, Facteau, Ward, Santor, Lacy, and Uhler have violated his constitutional rights, "there is

no necessity for further inquiries concerning qualified immunity" for these Defendants.

The Court must now also determine whether Defendants LaBonte, Garbera, and Lareau are

entitled to qualified immunity.  The Second Circuit has recognized that the availability of qualified

immunity may "turn[] on factual questions that cannot be resolved at [the motion to dismiss] stage of

proceedings." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002).  In this case, since the "objective reasonableness" of Defendants' actions depends at least in part on their alleged motivation in dealing with Plaintiff, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature.  Therefore, with respect to Defendants LaBonte, Garbera, and Lareau, "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

Accordingly, the Court finds that dismissal for qualified immunity is not currently warranted, and Defendants' motion for judgment on the pleadings is **denied** on this ground without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 58) is **GRANTED** with respect to Plaintiff's due process claims, denial of access to the courts claims, denial of right of association claims, and conspiracy claims, and that those claims are **DISMISSED** in their entirety without prejudice; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 58) is **DENIED** with respect to Plaintiff's retaliation claims against Defendants LaBonte, Garbera, and Lareau, **but GRANTED** with respect to Plaintiff's other retaliation claims.  Accordingly, all of Plaintiff's retaliation claims, **except those** against Defendants LaBonte, Garbera, and Lareau, are **DISMISSED** in their entirety without prejudice; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 58) is **DENIED** with respect to Plaintiff's equal protection claims against Defendant LaBonte **but GRANTED** with respect to Plaintiff's other equal protection claims.  Accordingly, all of Plaintiff's equal protection claims, **except those** against Defendant LaBonte, are **DISMISSED** in their entirety

31

without prejudice; and it is further

**ORDERED** that all of Plaintiff's claims against Defendants Artus, Berg, Facteau, Ward, Santor, Lacy, and Uhler in Plaintiff's Amended Complaint (Dkt. No. 30) are **DISMISSED** in their entirety without prejudice; and it is further

**ORDERED** that Counts 3, 4, 5, 7, 8, 9, 10, and 12 of Plaintiff's Amended Complaint (Dkt. No. 30) are **DISMISSED** in their entirety without prejudice; and it is further

**ORDERED** that, **WITHIN THIRTY (30) DAYS** of the date of this Decision and Order, (1) Defendants LaBonte, Garbera and Lareau shall further respond to Plaintiff's allegations of retaliation **and** (2) Defendant LaBonte shall further respond to his allegations of the denial of equal protection.

Dated: March 26, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge