UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ALEX VEGA,

                              Plaintiff,

              -v.-                                         9:04-CV-0750
                                                           (GTS/ATB)
MR. LAREAU, Corrections Sergeant;
G. LaBONTE, Corrections Officer; and
MR. GARBERA, Corrections Counselor,

                              Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ALEX VEGA, Plaintiff pro se
CHARLES J. QUAKENBUSH, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to Magistrate Judge Gustave J. Di Bianco for Report

and Recommendation by the Honorable Glenn T. Suddaby, United States District

Judge pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  Due to

Judge Di Bianco's retirement on January 4, 2010, the case was reassigned to me. (Dkt.

No. 70).

    In his amended civil rights complaint, plaintiff alleges that he was harassed and

discriminated against by defendants because of what defendants perceived to be

plaintiff's sexual orientation. (Amended Complaint (AC)) (Dkt. No. 30).  Plaintiff also

alleges that, after he filed grievances regarding the harassment and discrimination,

defendants retaliated against him by filing false misbehavior reports, not allowing him

to attend his assigned program, and threatening to transfer plaintiff out of protective custody and into general population at another correctional facility. (*Id*.) Plaintiff seeks substantial monetary relief.

Presently before the court is a motion for summary judgment pursuant to FED. R. CIV. P. 56 submitted by defendants Lareau, LaBonte, and Garbera.[1] (Dkt. No. 66). Defendants assert that plaintiff cannot substantiate his claims of retaliation or equal protection and, even if he could substantiate his claims, that qualified immunity precludes liability for damages. (*Id*.) Plaintiff has responded in opposition to the motion. (Dkt. No. 68). Defendants have filed a reply. (Dkt. No. 69). For the following reasons, this Court will recommend that defendants' motion for summary judgment be granted.

## DISCUSSION

### I.   Facts

Plaintiff Alex Vega commenced this action under 42 U.S.C. § 1983, alleging deprivation of his civil rights. The facts and procedural history of this case are set forth more fully in the Decision and Order of United States District Judge Suddaby filed on March 26, 2009, familiarity with which is assumed. (*See* Dkt. No. 65). In that Decision and Order, all defendants were dismissed except defendants Lareau, LaBonte, and Garbera, and all claims were dismissed except those alleging (1) retaliation by defendants LaBonte, Garbera, and Lareau and (2) violation of plaintiff's

---

[1] The defendants' names are spelled as set forth in defendants' Declarations. (*See* Dkt. Nos. 66-4, 66-6, and 66-8). The Clerk of the Court has corrected the docket report accordingly. As discussed below, plaintiff has withdrawn his claims against defendants Garbera and Lareau.

2

right to equal protection by defendant LaBonte. (*Id*. at 31-32).  The facts pertinent to defendants' present motion for summary judgment are related herein in the light most favorable to plaintiff as the non-moving party.

### A.    Uncontested Facts[2]

During the times relevant to this action, plaintiff was housed in the Assessment and Program Preparation Unit ("APPU") at Clinton Correctional Facility ("Clinton"). (*See generally* AC; Defs.' Rule 7.1 Statement ¶ 2; Dkt. No. 66-4 ("Garbera Declaration") ¶ 10).  The Clinton APPU is a transitional unit at which inmates receive counseling and services in order to prepare them for longer-term residence at other prison facilities.[3] (Defs.' Rule 7.1 Statement ¶ 3; Gabrera Decl. ¶ 10).  While housed at Clinton APPU, plaintiff was assigned to the church cleaning work detail which was usually supervised by defendant LaBonte. (Defs.' Rule 7.1 Statement ¶¶ 4, 9; Dkt. No. 66-6 ("LaBonte Decl.")  ¶¶ 4-6, 21; AC ¶¶ 3(f), 8-9).

Inmate Brooks was also incarcerated at Clinton during the time period relevant to plaintiff's claims. (Defs.' Rule 7.1 Statement ¶ 6;  AC ¶¶ 8, 12, 21-22; LaBonte Decl. ¶¶ 9-11).  As discussed below, defendant LaBonte and others suspected that plaintiff and Brooks were homosexual partners, which plaintiff disputes.  Under

---

[2]  These facts were set forth in defendants' Statement of Material Facts provided in accordance with Local Rule 7.1(a)(3) of the Northern District of New York.  The facts set forth as uncontested were included in defendants' Rule 7.1 Statement, supported by record citations, and admitted by plaintiff in his response to defendants' Rule 7.1 Statement.  (*See* Dkt. No. 66-3 ("Defendants' Rule 7.1 Statement"); Dkt. No. 68 at 1-2 ("Plaintiff's Response to Defendants' Rule 7.1 Statement")).

[3]  APPU is also "a unit for those inmates who are considered 'victim prone' for various reasons."  *Lewis v. Brooks*, 9:00-CV-1433, 2005 WL 928617, at *3 (N.D.N.Y. Mar. 10, 2005).

Department of Correctional Services ("DOCS") Standards of Inmate Behavior, inmates are forbidden to engage in, encourage, solicit or attempt to force others to engage in sexual acts. (Defs.' Rule 7.1 Statement ¶ 7; 7 N.Y.C.R.R. § 270.2 (Disciplinary Rule 101.10)).

In January 2004, plaintiff was a low-ranking inmate on the Clinton church cleaning crew, in terms of seniority. (Defs.' Rule 7.1 Statement ¶ 10; LaBonte Decl. ¶¶ 6, 16). On January 28, 2004, plaintiff appeared before the APPU program committee and was advised that he and inmate Brooks would not be allowed to work together in a work assignment. (AC ¶¶ 14-25). On January 29, 2004,[4] plaintiff filed a grievance describing a conversation that he had with defendant LaBonte on or about January 15, 2004 and complaining of statements made by members of the APPU committee members during the January 28, 2004 meeting. (Defs.' Rule 7.1 Statement ¶ 15; AC ¶¶ 20-23). The January 29, 2004 grievance did not mention defendant Lareau. (Defs.' Rule 7.1 Statement ¶ 17; Dkt. No. 66-9 ("Quakenbush Decl."), Ex. A).

During the winter and spring of 2004, there were occasions when plaintiff was not brought to his job with the Clinton church cleaning crew. (Defs.' Rule 7.1 Statement ¶ 19; AC ¶ 85; LaBonte Decl. ¶¶ 14, 16-22). Even on the days when he was not allowed to attend his church work program, plaintiff received full pay for those days. (Defs.' Rule 7.1 Statement ¶ 22; LaBonte Decl. ¶ 23). On April 16, 2004,

---

[4] While it appears that the grievance dated January 29, 2004 was not actually "filed" until February 2, 2004, in keeping with plaintiff's allegations as set forth in his amended complaint, the Court will refer to this grievance as the January 29, 2004 grievance. (*See, e.g.*, AC ¶¶ 23, 53).

4

defendant Lareau issued a misbehavior report, charging plaintiff with giving items of personal property to inmate Brooks without first obtaining the required authorization. (Defs.' Rule 7.1 Statement ¶ 26; Dkt. No. 66-8 ("Lareau Decl.") ¶ 6; Quakenbush Decl., Ex. B).

On April 16, 2004, correctional officer Charland searched plaintiff's cell and found a pair of scissors, which Charland believed to be contraband, and therefore he issued plaintiff a misbehavior report. (Defs.' Rule 7.1 Statement ¶ 27; Quakenbush Decl., Ex. B).  On April 22, 2004, at a Tier II hearing conducted by Lt. Lacy, the charges against plaintiff regarding the scissors were dismissed, and plaintiff entered a plea of guilty to the unauthorized exchange of property charge filed by defendant Lareau. (Defs.' Rule 7.1 Statement ¶ 28; Quakenbush Decl., Ex. B).  Plaintiff was sentenced to 15 days keeplock and 15 days loss of privileges. (*Id*.)

In the spring of 2005, plaintiff was transferred from Clinton to the Upstate Correctional Facility CADRE program.  (Defs.' Rule 7.1 Statement ¶ 23; Garbera Decl. ¶¶ 10-14).  The transfer came about via DOCS administrative processes over which none of three remaining defendants had any control. (Defs.' Rule 7.1 Statement ¶ 24; Garbera Decl. ¶¶ 13-16).  At Upstate, plaintiff was placed in a selective and advantageous work program, for which plaintiff had to voluntarily sign a participation agreement. (Defs.' Rule 7.1 Statement ¶ 25l Garbera Decl. ¶¶ 14-15).[5]

---

[5]  In addition to the facts outlined herein, Defs.' Rule 7.1 Statement includes the following recitation: "There is no competent, relevant, admissible evidence in the record that C.O. LaBonte, Counselor Garbera, or Lt. Lareau were motivated by a grievance to inflict any adverse retaliatory action against the plaintiff." Rule 7.1 Statement ¶ 18. While plaintiff admits the information set forth, (*see* Dkt. No. 68, ¶ 3), the Court will not consider this statement to be

### B.     Plaintiff's Additional Facts[6]

On January 15, 2004, defendant LaBonte told inmate Peter Grieco, plaintiff's

co-worker, that (1) LaBonte believed plaintiff was a homosexual because plaintiff

associated with inmate Mark Brooks, and (2) plaintiff and Brooks would not be

allowed to work in the same program at the same time. (AC ¶ 8).  After inmate Grieco

told plaintiff about Grieco's conversation with defendant LaBonte, plaintiff

confronted LaBonte about the conversation, whereupon LaBonte repeated the

statements to plaintiff, adding that "as long as plaintiff is assigned at the Church,

inmate Brooks will 'NEVER' be assigned, for fear of 'homosexual acts' being

committed between plaintiff and inmate Brooks." (*Id*. ¶¶ 9-11).  In response, plaintiff

told LaBonte that he was not homosexual; he had no record of homosexual acts in his

file; and was only friends with Brooks.  (*Id*. ¶ 12).

When plaintiff appeared before the APPU program committee on January 28,

2004, defendant Garbera told plaintiff that they all knew about plaintiff and inmate

Brooks "being an[ ] item," and that plaintiff could not change his work program to be

closer to Brooks.  (AC ¶¶ 15, 16).  Plaintiff told the committee that inmate Brooks was

on the waiting list for the church and plaintiff was trying to leave his church job.  (*Id*.

¶ 18).  Moreover, while plaintiff made it clear to the committee members that he was

not and never had been a homosexual, defendants Facteau, Ward and Garbera told

plaintiff that he was "guilty by association of being a homosexual, because plaintiff

---

an uncontested fact, especially since retaliation is at the center of plaintiff's claims.

[6]  This version does not include the uncontested facts set forth above.

associates and is friends with a 'known' homosexual (inmate Brooks), so get use[d] to being treated like a homosexual is treated in prison." (*Id*. ¶¶ 21, 22).  On January 29, 2004, plaintiff filed a grievance against defendants LaBonte, Facteau, Ward, and Garbera concerning LaBonte's statements of January 15, 2004 and the statements and actions of Facteau, Ward, and Garbera on January 28, 2004. (*Id*. ¶ 23).  Plaintiff alleges that after these incidents and the filing of the January 29, 2004 grievance, he was subjected to several retaliatory acts, including the loss of his work assignment and four false misbehavior reports, before he was transferred to Upstate in March 2005.

On February 9, 2004, plaintiff wrote to Berg, Assistant Superintendent of Clinton, complaining that plaintiff was not being taken to his church job as a form of retaliation by defendant LaBonte. (AC ¶ 36).  On the morning of February 18, 2004, plaintiff was not taken to his job at the church because he "was on call out, as an 'ADD ON' for the A.P.P.U. Law Library." (*Id*. ¶ 38).  While at the library, plaintiff and inmate Brooks submitted a request for Brooks to assist plaintiff with his legal work. (*Id*. ¶ 38).  While they were still in the library, they were informed by law library officer McLain that their request was denied pursuant to instructions from defendant Garbera that plaintiff and Brooks could not be on library call-out at the same time.  (*Id*. ¶ 39). After the conversation between McLain, plaintiff, and Brooks was complete, Garbera stood at the law library window taunting plaintiff and Brooks. (*Id*.)  Later that morning, while plaintiff was in line leaving the law library, defendant Garbera approached him and said "GOT YA." (*Id*. ¶ 42).

On the afternoon of February 18, 2004, defendant LaBonte did not take plaintiff

to his assigned church job. (*Id.* ¶ 43).  Plaintiff found out later that day that he had been placed on keeplock as a result of his being "out of place" in the law library.  (*Id.* ¶¶ 44-45).  Plaintiff claims that proper procedures for placing him in keeplock were not followed.  (*Id.* ¶ 45).  On February 18, 2004, plaintiff wrote a letter of complaint to Artus, the Superintendent of Clinton, and Berg outlining "the facts of incidents that occurred earlier in the day," claiming that the actions taken were harassment and retaliation for his January 29, 2004 grievance.  (*Id.* ¶ 46).  In response to that letter, Berg told plaintiff, among other things, that Berg could not control defendant Garbera's actions, and that law library officer McLain had given plaintiff false information about what Garbera had said about plaintiff and inmate Brooks. (*Id.* ¶ 49).

On February 19, 2004, plaintiff was served with a misbehavior report written by correctional officer Mayo charging plaintiff with, among other things, being out of place and violating rules related to inmate movement.  (AC ¶ 47).  At the subsequent Tier II hearing, defendant LaBonte testified that he did not take plaintiff to his assigned program that day because plaintiff was listed as an "ADD ON" for the law library for the day in question and was called out of the law library for a meeting with his counselor.  (*Id.* ¶ 51). As a result of LaBonte's testimony, plaintiff was found not guilty of the charges contained in the misbehavior report. (*Id.*)  Plaintiff wrote to Berg on March 1, 2004 requesting the status of his January 29, 2004 unlawful discrimination grievance against LaBonte, Facteau, Ward, and Garbera which had been pending for 31 days.  (*Id.* ¶ 53).

On March 27, 2004, plaintiff was not taken to his church job, although three

other members of the church crew were. (AC ¶ 63).  On March 29, 2007, when plaintiff asked defendant LaBonte why plaintiff was sometimes not taken to his church job, LaBonte said "because you are not allowed to work inside the Church and will only be used for outdoor work.  Faggots, Queers, Homosexuals and Transsexuals are not allowed inside a house of God, and you surly [*sic*] are one of those, since you are a friend with inmate Brooks." (*Id*. ¶ 64).  On April 7, 2004, while plaintiff was working at the church, defendant LaBonte told plaintiff that he didn't want plaintiff working at the church and stated "'I won't fire you, I won't refer you to the program Committee. You will resign before I do any of that.'" (*Id*. ¶ 68).

On April 16, 2004, plaintiff was placed on keeplock status for two misbehavior reports. (AC ¶ 71).  Plaintiff was then called to defendant Lareau's office, and accused of purchasing items for inmate Brooks. (*Id*. ¶¶ 72, 73).  Plaintiff claims that defendant Lareau intimidated plaintiff into admitting that he made purchases for inmate Brooks. (*Id*. ¶ 74).  When plaintiff returned to his cell, it was being searched. (*Id*. ¶ 75). Defendant Lareau informed plaintiff that inmate Brooks was told that plaintiff "snitched" on him, and Lareau threatened plaintiff with a transfer to Southport Correctional Facility Special Housing Unit.  (*Id*. ¶ 76).  Both plaintiff and inmate Brooks were keeplocked pending an investigation of the matter. (*Id*. ¶ 77).  On April 17, 2004, plaintiff received two misbehavior reports. (*Id*. ¶ 78).  On April 22, 2004, plaintiff was found guilty of purchasing items for inmate Brooks. (*Id*. ¶ 79).  The hearing officer told plaintiff that he would not lose his church job as a result of the disciplinary hearing.  (*Id*.)

9

On April 23, 2004, defendant LaBonte came to plaintiff's cell to retrieve the inclement weather clothing that plaintiff was issued for his church job; LaBonte demanded that plaintiff give him the winter gloves; plaintiff told defendant LaBonte that the gloves were at the church. (AC ¶ 81).  LaBonte told plaintiff that he would have to pay for the gloves.  (*Id.* ¶ 82).  When plaintiff asked LaBonte if he was fired from his church job, LaBonte said "yes."  (*Id.* ¶ 83).  Plaintiff asked LaBonte if he was being terminated from his job because of his recent disciplinary proceeding or because LaBonte didn't want him working there. (*Id.*)  LaBonte replied "I don't want you there, no faggots, queers or transsexuals work at [his] church area or in a house of God, and the ticket just gives me a reason to get rid of you." (*Id.*)  LaBonte also threatened that he could have plaintiff transferred at any time. (*Id.* ¶ 84).

Beginning on January 29, 2004, defendant LaBonte did not allow plaintiff to attend his church job for 23 out of 36 working days. (AC ¶ 85).  On May 4, 2004, plaintiff appeared before the APPU program committee and was told that he would not be assigned to any program except tailor shop, and therefore he should not ask to be re-assigned to the church. (*Id.* ¶ 89).  Plaintiff claims that the church was understaffed, but there was a waiting list of six months to a year for the tailor shop. (*Id.* ¶¶ 90-91).

On October 28, 2004, plaintiff again appeared before the APPU program committee and was told that he would begin a new work program in the tailor shop on November 1, 2004. (AC ¶ 125).  Plaintiff was warned that they would not tolerate any trouble from him at the tailor shop "like Plaintiff caused trouble at the Church Job," and plaintiff would be removed from the tailor shop if he caused trouble "and [would

be] sent to SHU/Box for longer than he thought possible." (*Id.*)  Prior to being

assigned to work in the tailor shop, plaintiff was without programming for eight

months. (*Id.* ¶ 126).  On January 5, 2005, plaintiff appeared before the Clinton APPU

Assessment Committee and was asked if he wished to be transferred out of Clinton

APPU.  (*Id.* ¶ 128).  Because he had a list of more than twenty enemies, plaintiff stated

that he did not want to be transferred out of APPU. (*Id.*)  On January 5, 2005,

defendant Garbera told plaintiff "'You don't file law suits in my jail and expect not to

have your ass thrown out of here by us Counselors.'"  (*Id.* ¶ 133).  On January 12,

2005,[7] Garbera told plaintiff "'[y]ou can't stop my method of getting you out of here, I

Win.'"  (*Id.* ¶ 135).  Plaintiff was transferred to Upstate on March 16, 2005. (*See* Dkt.

No. 37).

## II.   **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of

showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson*

*v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or

inferences to be drawn from the facts must be viewed in the light most favorable to the

party opposing the summary judgment motion." *Id.*  However, when the moving party

has met its burden, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty*

---

[7] While plaintiff's amended complaint states that Garbera's statement was made on January 12, 200**4**, given the sequence of events set forth in plaintiff's amended complaint, it appears that this statement was made on January 12, 200**5**.

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous review of the record" even where a party fails

12

to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

## III.   <u>Retaliation</u>

Any action taken by a defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in and of itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).  In order for plaintiff's retaliation claim to survive summary judgment, plaintiff must establish that

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

*Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)*, overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

The Second Circuit has defined "adverse action" in the prison context, as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (omission in original).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind, however, that claims of retaliation are "'easily fabricated'" and "'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration'" and thus, plaintiff must set forth non-conclusory

allegations. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (quoting *Dawes*, 239 F.3d at 491). Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137.

### A.  Defendants Lareau and Garbera

In his opposition to Defendants' motion for summary judgment, plaintiff states that he is withdrawing all claims against Lareau and Garbera. (Dkt. No. 68 ¶ 2). Therefore, with respect to all of the claims against Garbera and Lareau, defendants' motion for summary judgment should be granted. *See e.g. Rosen v. City of New York*, No. 07 Civ. 6018, 2009 WL 3489986, at *2 (S.D.N.Y. Oct. 28, 2009) (granting summary judgment with respect to claims withdrawn by plaintiff).

### B.  Defendant LaBonte

Plaintiff states that he filed a grievance on January 29, 2004 against defendant LaBonte complaining of comments made by defendant LaBonte on January 15, 2004 regarding plaintiff's sexual orientation, comments which plaintiff believed to be discriminatory. (AC ¶¶ 8-12, 22; *see also* Dkt. No. 66-10 at 12-14) ("January 29, 2004 grievance")).[8] Defendants have submitted a copy of the January 29, 2004 grievance. (Dkt. No. 66-10 at 12-14). Plaintiff captioned the grievance "UNLAWFUL DISCRIMINATION GRIEVANCE AGAINST: SGT. FACTO, COUNSELOR GARBERRA & MR. WARD." (*Id*. at 12). At first glance, the grievance does not

---

[8]  The grievance is actually dated January 28, 2004, however, for sake of consistency the Court will still refer to it as the January 29, 2004 grievance. (*See* Dkt. No. 66-10 at 12).

appear to be filed against defendant LaBonte. (*Id*.)  However, the body of the grievance does recount statements by defendant LaBonte as well as a conversation that plaintiff had with defendant LaBonte, clearly suggesting that plaintiff believed that defendant LaBonte was discriminating against plaintiff on the basis of what LaBonte perceived to be plaintiff's sexual orientation.  (*Id*.)  Moreover, Defendants' Rule 7.1 Statement concedes that plaintiff filed the January 29, 2004 grievance against LaBonte. (*See* Defs.' Rule 7.1 Statement ¶ 15).  Therefore, despite its caption, the Court will consider the January 29, 2004 grievance to have been filed against defendant LaBonte.  On February 9, 2004, plaintiff also submitted a letter to Berg complaining that defendant LaBonte was not taking plaintiff to his church job in "retaliation." (AC ¶ 36).

There is no dispute that plaintiff's complaint and grievance constitute protected activity. *See Davis*, 320 F.3d at 352-53 (filing a prison grievance is a constitutionally protected activity). *See also Chavis v. Struebel*, 317 F. Supp. 2d 232, 237-38 (N.D.N.Y. 2004) (finding that letter of complaint could be basis for retaliatory conduct).  Therefore, plaintiff meets the first prong of the test for retaliation.  Plaintiff must further show that he suffered adverse action, and that there was a causal connection between that adverse action and the protected activity.  If plaintiff can make these two showings, the court must determine whether defendants have established that they would have taken the same action even in the absence of the protected conduct.

Plaintiff claims that, in retaliation for plaintiff's grievance and complaint

against defendant LaBonte, LaBonte reduced the number of hours plaintiff was allowed to work at his church job.[9] (AC ¶ 85).  Construing plaintiff's amended complaint with great liberality, plaintiff may also allege that defendant LaBonte had plaintiff terminated from his church job in retaliation for plaintiff's grievance against LaBonte. (AC ¶ 83).  Neither party has addressed this claim in their papers in support of or in opposition to the present motion.  Plaintiff has, however, provided the Court with a copy of DOCS Directive # 4803, Inmate Program Placement. (Dkt. No. 68 at 11-13).  That directive provides that the Program Chairperson of the Inmate Program Assignment Committee "shall be responsible for all program assignments and removals."  (*Id*. at 12).  Since defendant LaBonte is not alleged to be the Program Chairperson of the Inmate Program Assignment Committee, no reasonable factfinder could conclude that defendant LaBonte had the authority to remove plaintiff from his church job.

Plaintiff alleges that, beginning on January 29, 2004, defendant LaBonte refused to let plaintiff attend his church job for a total of 23 out of 36 working days. (AC ¶ 85).  As discussed below, on some of those occasions, plaintiff did not attend

---

[9]  In his amended complaint, plaintiff also alleged that defendant LaBonte retaliated against plaintiff by issuing plaintiff a false misbehavior report on April 24, 2004.  (AC  ¶ 86). LaBonte's misbehavior report claimed that plaintiff lost state issued gloves. (*Id.*) Plaintiff admitted that he lost the gloves and entered a plea of guilty to the charge.  (*Id.* ¶ 95).  In his March 26, 2009 Decision and Order, District Judge Suddaby noted that "[w]hen it is undisputed that an inmate has in fact committed prohibited conduct, no retaliatory discipline claim can be sustained."  (Dkt. No. 65 at 25) (citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)). Since Plaintiff admitted that he lost the state issued gloves, Defendant LaBonte would have taken the adverse action even in the absence of the protected conduct, and that portion of plaintiff's retaliation claim against LaBonte was dismissed by Judge Suddaby. (Dkt. No. 65 at 25).

due to reasons beyond defendant LaBonte's control.  Further, defendant LaBonte points out that plaintiff received full pay even on the days that he was held back from his job. (LaBonte Decl. ¶ 22).

A job reassignment or termination can under certain circumstances constitute adverse action necessary to support a claim of retaliation. *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights."); *Baker v. Zlochowon*, 741 F. Supp. 436, 439 (S.D.N.Y.1990) ("a claim for relief can be stated under section 1983 for job for reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his [or her] legal rights ..."); *Gill v. Calescibetta*, No. 9:00-CV-1553, Report and Recommendation, 2009 WL 890661, at *11-12 (N.D.N.Y. Mar. 11, 2009) (Peebles, M.J.), *adopted* 2009 WL 890661, at *1-4 (N.D.N.Y. Mar. 31, 2009) (Suddaby, J.) (the termination of a job assignment can constitute adverse action for purposes of a retaliation analysis).  As noted, defendant LaBonte was not in a position to terminate or change plaintiff's job assignment.  This court doubts that plaintiff could establish that periodically keeping him from attending a job, with no monetary or other apparent penalty, constitutes the type of "adverse action" that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights. We need not resolve whether plaintiff has demonstrated the existence of a genuine issue of material fact as to whether defendant LaBonte took adverse action against plaintiff because, as discussed below, summary judgment can be predicated more

securely on other grounds.

To show retaliation in violation of the First Amendment, a plaintiff must demonstrate that constitutionally protected conduct was a substantial or motivating factor for a prison official's adverse action. *Bennett*, 343 F.3d at 137.  Plaintiff claims that because LaBonte's adverse actions began **after** plaintiff filed a grievance against him, the actions were in retaliation for the grievance.

> However, more than conclusory allegations [of a causal connection] are required to survive a summary judgment motion. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Bartley v. Collins*, No. 95 Civ. 10161, 2006 WL 1289256 (S.D.N.Y. May 10, 2006). Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives. *Colon*, 58 F.3d at 872-73; *Bartley*, 2006 WL 1289256, at * 8.

*Barclay v. New York*,  477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007) (Hurd, J.).  Plaintiff asserts that because defendant LaBonte began excluding him from his assigned church job **immediately** after plaintiff filed a grievance against him, "it is clear that the only reason why plaintiff was excluded from the work crew was because of the grievance that he filed against Officer LaBonte." (Dkt. No. 68 at 7).

In this case, plaintiff filed a grievance against defendant LaBonte on January 29, 2004. (AC ¶ 23).  Beginning on that date, plaintiff claims that defendant LaBonte did not take plaintiff to his church job for 23 out of the next 36 working days.  (*Id*. ¶ 85). The close proximity in time between the filing of grievance and LaBonte's action in not taking plaintiff to his assigned job is evidence which could lead a reasonable

factfinder to conclude that LaBonte's actions were causally related to plaintiff's grievance against him. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."). *See also Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995) (temporal proximity between an inmate's lawsuit and disciplinary action may serve as circumstantial evidence of retaliation).

Plaintiff argues further that defendant LaBonte's conduct was retaliatory because "just prior to the grievance being filed" plaintiff had received "positive evaluations" from defendant LaBonte with respect to plaintiff's work at the church. (Dkt. No. 68 at 7). While evidence of plaintiff's "***prior*** good discipline" might suggest that LaBonte's actions subsequent to the grievance were be retaliatory, in this case, one of the evaluations submitted by plaintiff was actually dated February 12, 2004– after plaintiff filed a grievance against LaBonte. (*Id*. at 9). Defendant LaBonte's February 12, 2004 evaluation actually praises plaintiff's work performance and in fact recommends that plaintiff receive a pay increase. (*Id*.) This evidence suggests that defendant LaBonte was ***not*** taking retaliatory action against plaintiff. If defendant LaBonte was truly intent on retaliating against plaintiff and keeping him from his church job for improper motives, LaBonte could have issued plaintiff an unsatisfactory evaluation and would not have recommended a pay increase.

Plaintiff's own statements provide further evidence to undercut his argument that LaBonte was retaliating against plaintiff on account of his January 29, 2004 grievance. When appealing another grievance, plaintiff stated that his misbehavior

19

report for being "out of place" in the law library "was dismissed ONLY after

Corrections Officer G. LaBonte, appeared at [plaintiff's] hearing and stated that

[plaintiff] DID IN FACT" have library call out on the day in question.  (Dkt. No.

66-10 at 10).  LaBonte's conduct in this instance–in February 2004–is totally opposite

to an act of retaliation.

This court doubts that, despite the evidence of temporal proximity,  plaintiff

could persuade a reasonable factfinder that his grievance against LaBonte was a

substantial or motivating factor in LaBonte's decision to exclude plaintiff from the

church work program.   Again, however, we need not resolve this issue and will

recommend summary judgment on other grounds.

Even though plaintiff has arguably presented some evidence to establish a link

between the protected activity and the alleged retaliation,

> [a] defendant is entitled to summary judgment on a retaliation claim "if
> the undisputed facts demonstrate that the challenged action clearly would
> have been taken on a valid basis alone." *Davidson v. Chestnut,* 193 F.3d
> 144, 149 (2d Cir. 1999). "A finding of sufficient permissible reasons to
> justify state action is readily drawn in the context of prison
> administration," for two reasons. *Graham* [*v. Henderson*], 89 F.3d [75,]
> 79 [2d Cir. 1996]. First, "[r]etalitation claims by prisoners are prone to
> abuse since prisoners can claim retaliation for every decision they
> dislike." *Id.* Second, "we have been cautioned to recognize that prison
> officials have broad administrative authority." *Id.*

*Miller v. Loughren*, 258 F. Supp. 2d 61, 62 (N.D.N.Y. 2003) (Munson, S.J.).  *See also*

*Bennett*, 343 F.3d at 139 (Once plaintiff produces evidence sufficient to raise a

material question of fact as to retaliation, the burden shifts to the defendant to

demonstrate through admissible evidence that the challenged actions would have

occurred in any event.).

The record contains the affidavit of defendant LaBonte wherein he asserts that plaintiff was not taken to his assigned job on numerous occasions for legitimate administrative reasons.  *See generally* LaBonte Decl.  Defendant LaBonte was the officer primarily charged with supervising the church work crew. (LaBonte Decl. ¶ 4; Defs.' Rule 7.1 Statement ¶ 4).  Defendant LaBonte states, and plaintiff concedes, that plaintiff was a low-ranking inmate on the church cleaning crew. (Defs.' Rule 7.1 Statement ¶ 10; Pl.'s Response to Defs.' Rule 7.1 Statement ¶ 3).  In fact, LaBonte states that plaintiff was "one of the least senior members of the church crew, if not the lowest ranking." (LaBonte Decl. ¶ 6).  As the supervising officer for the church work crew, it was LaBonte's responsibility to determine on a day to day basis how many inmates were needed to complete jobs at the church on any given day.  (LaBonte Decl. ¶ 17).  This determination was made based upon the amount of work to be done on a particular day.  (*Id*.)  If there were insufficient jobs to be completed on any given day, plaintiff, "[a]s the junior member of the church detail . . . would be the first to be cut." (*Id*.)

Defendant LaBonte further states that during the period in question, plaintiff did not attend his work program at the church for various reasons beyond LaBonte's control.  (LaBonte Decl. ¶¶ 21-22).  For example, plaintiff missed some days because he had signed up to attend library call out.  (*Id*. ¶ 21).  In February 2004, plaintiff was keeplocked as a result of a disciplinary report issued by correctional officer Mayo. (*Id*.)  On April 2, 2004, plaintiff had a medical call out; on April 8-9, 2004, the church

21

crew did not work because the church was used for religious observances; and on April 16, 2004 plaintiff was keeplocked.  (*Id*.)  On other days, when defendant LaBonte was not scheduled to work, LaBonte's relief officer decided whether or not plaintiff attended his church job.  (*Id*. ¶ 22).  Defendant LaBonte points out that plaintiff received full pay for the days he was not included in the church work crew.  (*Id*. ¶ 23).

LaBonte further states that "[t]ensions had developed between [plaintiff] and other church crew inmates because of the situation with inmate Brooks."  (LaBonte Decl. ¶ 18; *see also* Dkt. No. 68 at 9 (Inmate Progress Report dated February 12, 2004 wherein LaBonte noted that "Inmate Vega has had minor disagreements with co-workers, but has been able to work through them.")).  LaBonte states that members of the church crew reside in the same cell block, and other members of the crew were aware of Brooks' attempt to join the crew, and "resented that an inmate 'couple' might become part of their work crew." (LaBonte Decl. ¶ 12).  Because plaintiff was attempting to get his friend Brooks assigned to the church crew, LaBonte believed that the other members of the church work crew felt that plaintiff "was pushing to get a benefit which other prisoners knew better than to seek."  (*Id*. ¶ 13).  Tensions among inmates present security concerns because they can give "rise to an increased potential for violence during work at the church" and present "a danger to inmates as well as to the single security officer attending the work detail."  (*Id*. ¶ 18).  Because of this tension, LaBonte states that "if the church job could be done with one less inmate [he] would choose to leave [plaintiff] behind."  (*Id*.)

LaBonte states that, based upon his observations of the behavior of plaintiff and Brooks, as well as upon reports from security staff and other inmates, he believed that plaintiff and Brooks might be involved in a homosexual relationship.[10]  (LaBonte Decl. ¶ 7).  The existence of such a relationship is not relevant; rather, LaBonte's and Garbera's statements are evidence of LaBonte's state of mind or perception.  The fact that LaBonte **perceived** that such a relationship may have existed between plaintiff and Brooks demonstrates only the **reasonableness** of LaBonte's actions and his concern that the security of the facility could be implicated by such a perceived relationship.[11]

Defendant LaBonte has thus provided permissible reasons for keeping plaintiff from his job assignment–namely staffing and security concerns.[12]  *See, e.g., Hudson v. McMillan,* 503 U.S. 1, 6 (1992) (noting that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline

---

[10] Defendant Garbera, a Corrections Counselor at Clinton, has stated that during the time relevant to plaintiff's allegations, he "recall[ed] noting that [plaintiff's] attentive behavior toward inmate Brooks–who was making overt efforts to present himself as female–suggested [plaintiff's] interest in a homosexual relationship.  Not only would this violate DOCS regulations, it carried a potential for physical danger.  We were aware of the facts of the plaintiff's Broome County conviction, an extremely violent rape and homicide. We had to be concerned about the possibility of similar behavior."  (Garbera Decl. ¶ 19).

[11] A fact is "material" only if it has some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.  *See also Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248

[12] Defendant LaBonte's decision to have only enough inmates present at the church on a given day to complete the required jobs is reasonable.  It is also reasonable to assume that idle inmates would present more of a security concern than inmates who are kept busy performing required tasks.

and to maintain institutional security." (internal quotation marks and citation omitted).

Plaintiff has not submitted sufficient evidence to raise a question of fact as to the

reasonableness of defendant LaBonte's actions, but relies only upon his own

conclusory statement that "[b]ecause of the positive Work Performance Evaluations

that plaintiff received during his period assigned to the Cleaning Crew, there is no

other plausible excuse for LaBonte to hold back" plaintiff from the church cleaning

crew except in retaliation for plaintiff's grievance against LaBonte. (Dkt. No. 68 at 5).

Plaintiff's statement that there is no "other plausible excuse" for defendant LaBonte's

actions is contradicted by the actual facts in this case, and plaintiff's retaliation claim

fails because LaBonte has produced sufficient evidence that he would have taken the

same action for valid reasons. *See Graham v. Henderson*, 89 F.3d 75, 81 (2d Cir.

1996) (finding that even assuming that a retaliatory motive existed, defendant would

still be entitled to summary judgment because there are "proper, non-retaliatory

reasons" for the actions taken). *See also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d

Cir. 1994) (A finding of sufficient permissible reasons to justify state action is "readily

drawn in the context of prison administration where we have been cautioned to

recognize that prison officials have broad administrative and discretionary authority.")

(quotation marks omitted).

     Accordingly, I find that no reasonable factfinder could conclude in plaintiff's

favor with respect to the retaliation claim against defendant LaBonte.  Thus, plaintiff's

claim that defendant LaBonte retaliated against plaintiff for filing a grievance or

complaint should be dismissed.

**IV.    Equal Protection**

Plaintiff claims that defendant LaBonte denied him equal protection by not allowing plaintiff to attend his prison job because the defendant LaBonte believed plaintiff to be a homosexual.

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.* 473 U.S. 432, 439 (1985).  Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person*.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis in original) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

"Sexual orientation has been held to be a basis for an equal protection claim under Section 1983." *Emblen v. Port Authority of New York/New Jersey*, No. 00 Civ. 8877, 2002 WL 498634, at *7 (S.D.N.Y. Mar. 29, 2002) (citing *Quinn v. Nassau County Police Dep't,* 53 F. Supp. 2d 347, 356-57 (E.D.N.Y. 1999) (noting that the Supreme Court has found that government discrimination against homosexuals, in and of itself, violates the Equal Protection Clause) (citing  *Romer v. Evans,* 517 U.S. 620 (1996).  *See also Holmes v. Artuz*, 95 CIV. 2309, 1995 WL 634995, at *1 (S.D.N.Y. Oct. 27, 1995) (removal from a prison job because of declared sexual orientation may state a claim under Section 1983) (citing *Kelley v. Vaughn*, 760 F. Supp. 161, 163

25

(W.D. Mo. 1991) (denying motion to dismiss on ground that inmate who claims his bakery prison job was terminated solely because of sexual orientation may have a valid equal protection claim)); *Howard v. Cherish*, 575 F. Supp. 34, 36 (S.D.N.Y. 1983) (recognizing in dicta that complaint might state claim under § 1983 if it alleged that individual was discriminated against solely because of sexual orientation).

Defendant LaBonte correctly contends that plaintiff has no right to his prison job. *See Gill v. Mooney,* 824 F.2d at 194.  However, that is not the question presented on this equal protection claim.  Instead, the question is whether plaintiff was protected from discrimination based upon his perceived sexual orientation.  In this respect, District Judge Suddaby has already concluded that plaintiff stated an equal protection claim sufficient to survive a motion to dismiss or for judgment on the pleadings.[13] (Dkt. No. 65 at 24-25).  *See also Bussey v. Phillips*,  419 F. Supp. 2d 569, 588 (S.D.N.Y. 2006) ("A '[p]laintiff has no right to any particular prison job, but prison officials cannot discriminate against him on the basis of [an impermissible consideration] in work assignments.'")[14] (quoting *LaBounty v. Adler*, No. 89 Civ. 4242, 1999 WL 961776, at *2 (S.D.N.Y. Oct. 21, 1999) (other citation omitted).

Plaintiff has alleged that defendant LaBonte did not allow plaintiff to attend his church job on multiple occasions, even though other inmates were taken to their church job on those days, because LaBonte perceived plaintiff to be homosexual. (AC

---

[13]  Despite the fact that plaintiff's equal protection allegations survived the pleading stage, the standard of proof at summary judgment is more demanding; plaintiff's allegations "must be supported by specific facts raising a genuine issue for trial." *Bussey,* 419 F. Supp.2d at 582.

[14]  In *Bussey*, the impermissible consideration was race.  *Id*.

¶¶ 36, 52, 53, 63, 64, 83, 85). The fact that plaintiff asserts that he is not homosexual is irrelevant to his equal protection claim. *See Emblem*, 2002 WL 498634 at *7 (when plaintiff alleges denial of equal protection on the basis of homosexuality, the fact that plaintiff is not a homosexual is "irrelevant").

In *Romer v. Evans*, the Supreme Court, without specifically examining whether homosexuals are a suspect class, used the rational basis test to invalidate an amendment to the Colorado constitution prohibiting all governmental action designed to protect homosexuals from discrimination. *Romer*, 517 U.S. at 631-35. *See also Anderson v. Branen*, 799 F. Supp. 1490, 1492 (S.D.N.Y. 1992) ("An equal protection analysis of discriminatory acts against homosexuals must be conducted pursuant to a rational basis test."). Thus, in order to establish an equal protection violation, plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citation and internal quotations omitted)

As stated above, defendant LaBonte has set forth numerous legitimate penological reasons supporting his decision to exclude plaintiff from the church work crew on multiple occasions, the most important being the need to maintain prison security and order. *See Hudson*, 503 U.S. at 6 (noting that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and

27

discipline and to maintain institutional security." (internal quotation marks and citation omitted)).

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . . . '[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.'
> . . .
> Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . . . Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*,  441 U.S. 520, 546-47 (1979) (internal citations and footnote omitted).

*See also Griffin v. Donelli*, No. 05-CV-1072, Report-Recommendation and Order, 2010 WL 681394, at *11 (N.D.N.Y. November 24, 2009) (Homer, M.J.), *adopted* on *de novo* review, 2010 WL 681394, at *1 (N.D.N.Y. Feb. 24, 2010) (McAvoy, S.J.) (finding that "[o]rder [and] security . . . are valid and substantial penological interests that staff in a prison environment are entitled to, and are in fact required to act upon.").

Based upon his observations of interactions between plaintiff and inmate Brooks as well as reports from security staff and other inmates, defendant LaBonte was concerned that conflicts might arise between plaintiff and other members of the church crew. (LaBonte Decl. ¶ 12-13).  Defendant LaBonte's concerns were validated by LaBonte's receipt of a letter from inmate Brooks indicating that a member of the church work crew (not plaintiff) had made sexual advances to Brooks which were refused.  (*Id*. Ex. A).  A reasonable factfinder could conclude that this letter, coupled

with LaBonte's suspicion that plaintiff and inmate Brooks might be involved in a relationship, provided a reasonable basis for LaBonte to believe that plaintiff's presence in the church work crew could present safety concerns.

Apart from defendant LaBonte's reasons for excluding plaintiff from his assigned job, plaintiff's own statements are fatal to his claim that defendant LaBonte discriminated against him on the basis of plaintiff's perceived sexual preference.  In his January 29, 2004 grievance, plaintiff stated that "I was soon to learn that it WAS NOT Officer LaBonte who was DISCRIMINATING against me and Inmate Brooks, but a Superior Officer, who gives the orders. (Dkt. No. 66-10 at 13) (emphasis in original).

Based upon the evidence, a reasonable factfinder could conclude that defendant LaBonte's concern for institutional safety, his attempt to maintain staffing on the church work crew at reasonable levels, and his policy of cutting the hours of more junior members of the work crew first, all suffice to satisfy the rational basis test and constitute legitimate reasons to exclude plaintiff from the church work crew on various days.  Moreover, no reasonable factfinder could conclude that defendant LaBonte had the authority to remove plaintiff from his church job.  Accordingly, I find that no reasonable factfinder could conclude in plaintiff's favor with respect to the equal protection claim against LaBonte.  Thus, plaintiff's claim that defendant LaBonte violated plaintiff's right to equal protection should be dismissed.

## V.   **Qualified Immunity**

In the alternative, defendants argue that they are entitled to qualified immunity

29

with respect to plaintiff's claims that he was retaliated against for engaging in a protected activity in violation of the First Amendment and denied equal protection in violation of the Fourteenth Amendment.  In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), *modified by Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory in all cases").  The Court may also examine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  However, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  Since the Court has concluded in this case that no First or Fourteenth Amendment violations occurred, the Court need not address qualified immunity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the motion for summary judgment filed on behalf of defendants Lareau, LaBonte, and Garbera (Dkt. No. 66) be **GRANTED** and the amended complaint be **DISMISSED WITH PREJUDICE AS TO ALL REMAINING DEFENDANTS AND CLAIMS**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72.

Dated: March 16, 2010

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**